UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA

        -against-                      12 Cr. 801 (RWS)

                                        SENTENCING
DAVID BERSON,                       OPINION

                       Defendant.

------------------------------------X

**Sweet, D.J.**

On October 22, 2012, David Berson pled guilty to one count of mail fraud, with which he was charged in a single count information filed on October 22, 2012. For the reasons set forth below, Berson will be sentenced to 366 days, followed by two years' supervised release, subject to the scheduled sentencing hearing on February 16, 2016.

**Prior Proceedings**

Berson is named in a single count information filed in the Southern District of New York on October 22, 2012 (the "Information"). Count One charges that from in or about December 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, Berson willfully and

1

knowingly, having devised a scheme and artifice to defraud, for obtaining money and property by means of false and fraudulent pretenses, representations and promised, for the purpose of executing such scheme and artifice and attempting to so do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and did receive therefrom matters and things, and did cause to be delivered by mail and such carriers, according to the direction thereon, such matters and things, to wit, Berson mailed monthly account statements containing false information to investors from whom he and an unindicted individual had solicited money for an investment program, in violation of 18 U.S.C. § 1341, 2. As a result of committing the offense alleged, the Information alleged Berson shall forfeit to the United States all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 981(a)(1)(D), in the amount of $322,000.

On October 22, 2012, Berson allocuted to his conduct as charged in the Information. He is scheduled to be sentenced on February 16, 2016.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Reports ("PSRs") with respect to Defendant's personal and family history.

**The Offense Conduct**

The Court adopts the summarized facts below with respect to the offense conduct. These facts are derived from the PSR, the

Government's 5K1.1 submission, and the Defendant's and the Government's sentencing submissions.[1]

Berson, a tax preparer, met Fred Miller, a day-trader, in 2002. Miller pitched a strategy to Berson to raise money for Miller to invest, leverage, and produce larger profits. Miller guaranteed a high rate of return, and Berson solicited his tax preparation clients to invest. Berson and a number of clients invested in the Miller ventures. Berson set up entities in which he placed the client investments, and from which funds were transferred to Miller. That majority of investors in the Miller ventures were Berson's clients. From 2003 to 2007, more than $6.5 million was raised from 89 victims, $3,534.061 of which was

---

[1] Defendant objects to numerous findings contained in the PSR and the Government's 5K1.1. See Def.'s Response and Objections to What We Maintain is A Substantially and Materially Inaccurate "Presentence Investigation Report," Received on February 4, 2016 ("Def.'s Opp."). Defendant's most consequential objection asserts that "virtually all of the approximately $3,534,000 placed in the Miller venture by Berson's clients were lost prior to December 2004, so that Berson's criminal conduct, commencing in December 2004, was not the cause of any losses." Id. at 5. The Government objects, asserting the $3,543,000 loss applies to Defendant's conduct. Gov.'s Letter of Feb. 10, 2016. Much of Defendant's response objects to the PSR for failing to defer to the Government's summary of facts in its 5K.1 letter. See Def.'s Opp. The Court notes both the objections and that PSR facts are properly based on an investigation by the FBI, not the Government's 5K1.1 submission. Determinations herein corresponding to facts to which Defendant objects indicate Defendant's objections have been overruled.

derived from Berson's clients. Berson earned money from the investments, which he reinvested with Miller.

In late 2004, Berson became concerned about Miller's fulsomeness regarding these investments. Berson acknowledged that he should have reported Miller to the authorities at this time. Instead, Berson continued to facilitate Miller's fraud by knowingly providing inaccurate financial statements to his clients to cover up their losses. Despite his then-knowledge about Miller's frauds, Berson continued to solicit and facilitate additional investments, and his clients invested approximately another $260,000 in the Miller investments after December 2004.

Berson initiated contact with federal authorities after an investigation was opened in to Miller's trading. Berson entered a guilty plea on October 16, 2012 before the Honorable Magistrate Judge Henry B. Pitman pursuant to a cooperation agreement.

**The Relevant Statutory Provisions**

For Count One of the Information, the maximum term of imprisonment is 20 years. 18 U.S.C. § 1341. The Court may impose

a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). The defendant is eligible for not less than one nor more than five years' probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). The maximum fine is $7,068,000, twice the loss. 18 U.S.C. § 3571(b). Restitution in the total amount of $3,534,000 shall be ordered. 18 U.S.C. § 3663A. Defendant must forfeit all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, in the amount of $322,000, constituting proceeds obtained directly or indirectly as a result of the mail fraud violation set forth in Count 1 of the Information. 18 U.S.C. § 981(a)(1)(D). A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

**The Guidelines**

The 2015 edition of the United States Sentencing Commission Guidelines Manual, incorporating all guideline amendments, has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11.

The guideline for 18 U.S.C. § 1341 is found in U.S.S.G. § 2B1.1. That section provides the base offense level of 7. U.S.S.G. § 2B1.1(a)(1).

7

Defendant disputes whether any aggravating adjustments apply. With respect to loss amount, the Court defers to the Government's sentencing submission stating a loss of $3,54,000 applies. An 18-level increase is therefore warranted. U.S.S.G. § 2B1.1(b)(1)(G).

With respect to victims, the record establishes Berson solicited investments from clients after December 2004 while committing the instant offense. That some victims lost some of their money outside of the period does not negate their victim status. Noting the victim impact statements, 89 total victims, the Government's submission stating that there were at least 10 victims of the conduct to which Defendant has allocated, and that the two-level enhancement applies for as few as 10 victims, the Court finds a two-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i). The adjusted offense level is therefore 27.

The Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. U.S.S.G. § 3E1.1(a).

The Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. U.S.S.G. § 3E1.1(b). The total offense level is therefore 24.

Defendant has no criminal history. Accordingly, the lack of criminal convictions result in a criminal history score of zero. Pursuant to Chapter 5, Table A of the U.S. Sentencing Guidelines, a criminal history score of zero establishes a criminal history category of I.

Based on the total offense level of 24 and a criminal history category of I, the guideline range of imprisonment is 51 to 63 months.

Since the offense is a Class C Felony, the guideline range for a term of supervised release is 1 to 3 years. U.S.S.G. § 5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, the Defendant is ineligible for probation. U.S.S.G. § 5B1.1, commentary (2).

The fine range for this offense is from $10,000 to $100,000. U.S.S.G. §§ 5E1.2(h)(1) (referring to U.S.S.G. § 5E1.2(c)(3) (2014)).

Costs of prosecution shall be imposed on Defendant as required by statute. U.S.S.G. § 5E1.5. In determining whether to impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. § 5E1.2(d)(7); 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The 2015 advisory from the Administrative Office of the United States Courts provides a daily cost of $84.00, a monthly cost of $2,552.00, and an annual cost of $30,621.00 for imprisonment.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's

decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), having considered the Guidelines and all of the factors set forth in § 3553(a), and having received a motion from the Government detailing Berson's assistance, the Court has decided to depart downward pursuant to U.S.S.G. § 5K1.1.

Berson's attorney initiated contact with federal authorities. In several proffers, Berson provided information about the extent of the fraud he engaged in with miller, and provided related documentation. Berson made at least twelve consensual recordings with Miller, and was both proactive and cooperative with the FBI. Miller admitted the loss, and in by the Government's account, was forthcoming, thorough, and truthful, doing everything asked of him to facilitate prosecution. Berson has acknowledged his wrongdoing. In light of his assistance to the authorities, a downward departure is appropriate.

**The Sentence**

For the instant offenses, David Berson shall be sentenced to 366 days in prison for Count One, followed by two years' supervised release.

As mandatory conditions of his supervised release, Defendant shall:

(1) Not commit another federal, state, or local crime.

(2) Not illegally possess a controlled substance.

(3) Not possess a firearm or destructive device.

(4) Cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended based on the Court's determination that the Defendant poses a low risk of future substance abuse.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

(1) Defendant shall submit his person, residence, place of business, vehicle, and any property or electronic device under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(2) Defendant shall provide the probation officer with access to any requested financial information.

(3) The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

(4) Defendant is to report to the nearest Probation Office within 72 hours of release from custody.

(5) Defendant is to be supervised by the district of residence.

It is further ordered that Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

Defendant does not have the ability to pay a fine and thus the fine in this case is waived.

It is further ordered that the Defendant shall make restitution in the amount of $3,534,000, payable to the Clerk, U.S. District Court, for disbursement to the victims listed in the PSR's attached addendum. The restitution shall be paid in monthly installments of $300 over a period of supervision to commence 30 days after the date of the judgment or release from custody of imprisonment.

13

The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

If the Defendant is engaged in a BOP non-UNICOR work program, the defendant shall pay $25 per quarter toward the criminal financial penalties. However, if the defendant participates in BOP's UNICOR program as a grade 1 through 4, the Defendant shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations, 28 C.F.R. § 545.11.

Defendant shall forfeit the Defendant's interest in any property constituting proceeds from the offense to the United States in the amount of $322,000, pursuant to his plea agreement. Defendant's objection that the $322,000 he received traceable to commission of the offense was ultimately lost does not alter that these proceeds were traceable to commission of the offense, and thus appropriate for forfeiture, nor that Defendant admitted such forfeiture in his plea.

Defendant is eligible for voluntary surrender. He has kept all court appearances and has been in compliance with all terms

14

and conditions of his pretrial release. He is not viewed as a flight risk or a danger to the community.

It is so ordered.

New York, NY
February 11, 2016

_____
ROBERT W. SWEET
U.S.D.J.